IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LOURDES RUBI | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:19cv481-HSO-RPM |
| | § | |
| BP EXPLORATION & PRODUCTION, INC., AND BP AMERICA PRODUCTION COMPANY | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION [128] FOR LEAVE TO FILE SUR-REPLY, AND GRANTING DEFENDANTS' MOTION [121] FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendants BP Exploration & Production, Inc., and BP America Production Company's Motion [121] for Summary Judgment Based on the Lack of Expert Evidence as to the Extent and Duration of Plaintiff's Alleged Exposure, and Plaintiff Lourdes Rubi's Motion [128] for Leave to File Sur-Reply. After consideration of the record, the parties' Motions, and relevant legal authority, the Court is of the opinion that Plaintiff's Motion [128] for Leave to File Sur-Reply should be denied, and that Defendants' Motion [121] for Summary Judgment should be granted. Plaintiff's claims in this lawsuit should be dismissed with prejudice.

I. BACKGROUND

Plaintiff Lourdes Rubi ("Plaintiff" or "Rubi") alleges she suffered a Later-Manifested Physical Condition caused by her exposure to substances during her work in the clean-up effort following the 2010 *Deepwater Horizon* Oil Spill. Plaintiff

is a member of the *Deepwater Horizon* Medical Benefits Class and is covered by the Medical Settlement Agreement ("MSA") entered in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, as Amended on May 1, 2012*, commonly referred to as "MDL 2179." Compl. [1] at 1 n.1, 5. The MSA resolved

> certain claims of individuals engaged as clean-up workers and residents of particular geographical boundaries in the Gulf of Mexico related to their exposure to oil and/or dispersants arising from the DEEPWATER HORIZON incident and subsequent response efforts.

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2:10-md-2179, 2016 WL 4091416 at *4 (E.D. La. Aug. 2, 2016). On January 11, 2013, the MSA was given final approval and became effective on February 12, 2014. *See id.*

The MSA afforded class members who did not opt-out of the *Deepwater Horizon* Medical Benefits Class two remedies for pursuing their medical claims. *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2:10-md-02179-CJB-DPC, ECF 6427-1 at 32 (E.D. La. May 3, 2012).[1] The first was a compensation plan which provided fixed payments for Specified Physical Conditions ("SPC"). *Id.* at 25, 32, 41. The second remedy allowed class members to bring a lawsuit against BP America Production Company and BP Exploration & Production, Inc. ("BP Defendants") for "Later-Manifested Physical Conditions" ("LMPCs"). *Id.* at 57. LMPCs are physical conditions which a class member claims are the result of spill-related exposures that were first diagnosed after April 16, 2012. *Id.* at 17-18. Lawsuits seeking recovery for LMPCs are referred to as Back-

---

[1] The pagination used here is that of MSA, rather than the page numbers generated by the Court's Case Management/Electronic Case Files system.

2

End Litigation Option ("BELO") suits. *Id.* at 9. In a BELO lawsuit, a plaintiff must prove legal causation. *Id.* at 67.

According to the Complaint, from approximately May 1, 2010, until July 31, 2010, Rubi worked as a Clean-Up Worker, as defined by the MSA, in Gulf Shore [sic], Mississippi, for OSSI, following the *Deepwater Horizon* Oil Spill. Compl. [1] at 1, 3, 5. She performed Response Activities as defined by the MSA, which consisted of shoreline cleanup and boom decontamination. *Id.* at 5. Rubi alleges that during her performance of these activities she was exposed through inhalation, airborne, and direct contact to oil, dispersants, and other harmful chemicals. *Id.* at 5-6. On some occasions, Rubi's eyes, nose, mouth, and skin were exposed to oil, dispersants, and other harmful chemicals because of a lack of protective gear. *Id.* at 6. Rubi asserts that, after her exposure to these items, she "suffered permanent injuries and was first diagnosed with Chronic Sinusitis." *Id.* The Complaint states that Rubi submitted a SPC claim, was approved as a class member, and received a determination for her SPC. *Id.* at 5-6. Rubi's SPC claim is a separate injury from the LMPC claims she asserts in this BELO lawsuit. *See id.*

Rubi alleges that she "was first diagnosed with Chronic Sinusitis on March 28, 2013." *Id.* at 6. She received a valid Notice of Intent to Sue Letter, as required by the MSA, on July 6, 2018, and timely filed her BELO Complaint on February 8, 2019, within the 6-month period of receiving BP Defendants' Notice required by the MSA. *See id.* The case was transferred to this Court from the Eastern District of Louisiana on August 11, 2019. Order [7].

The initial Case Management Order [25] set Rubi's deadline to designate expert witnesses for May 1, 2020. *See* Order [25] at 4. This deadline has been extended by the Court several times. *See* Apr. 17, 2020, Text Order; June 2, 2020, Min. Entry; June 16, 2020, Text Order. On October 6, 2020, Plaintiff filed her Notice [69] of Service Designation of Experts, and a month later, BP Defendants filed their Notice [74] of Service Designation of Experts.

Two months after designating her experts and after her deadline for doing so, on December 3, 2020, Rubi filed a Motion [88] to Continue and Enter a New Scheduling Order "based on newly developed scientific evidence." Mot. [88] at 1. Rubi cited a study titled "Invisible Oil Beyond the Deepwater Horizon Satellite Footprint" (the "Invisible Oil Study") involving the "spatial extent" and toxicity of the released oil. *See id.* at 3-4. She represented that she had retained one of the study's key researchers, Natalia Perlin, Ph.D. ("Dr. Perlin"), to apply the framework utilized in the study to

> (1) quantify and locate previously unaccounted for amounts of crude oil relevant to the Plaintiff, and (2) calculate corresponding levels of polycyclic aromatic hydrocarbons at the areas where the Plaintiff was working at on specific dates and times.

*Id.* at 7. The Magistrate Judge granted in part and denied in part Rubi's Motion [88] and set a deadline of April 12, 2021, for Rubi to designate experts based on the study. *See* Order [105] at 3. Upon her additional Motions [104], [112], the Magistrate Judge afforded Rubi until May 20, 2021, to designate experts "related to the extent and duration of exposure." Order [116] at 4. Rubi provided her new Expert Witness Disclosure to BP Defendants on that date, designating as expert

4

witnesses Dr. Perlin and Claire Beatrix Paris-Limouzy, Ph.D. ("Dr. Paris"). *See* Discl. [121-4] at 1-2.[2]

BP Defendants have filed the present Motion [121] for Summary Judgment on grounds that "Plaintiff has produced no expert evidence demonstrating the extent or duration of her alleged exposure to oil, dispersants, or other substances as a result of the *Deepwater Horizon* oil spill." Mot. [121] at 1. Rubi has filed a Response [126] in opposition to the Motion [121], and BP Defendants have filed a Reply [127]. Rubi then filed a Motion [128] for Leave to File Sur-Reply, which BP Defendants oppose. *See* Resp. [129]; Mem. [130].

## II. DISCUSSION

A.   Rubi's Motion [128] for Leave to File Sur-Reply

1.   Relevant legal authority

The Court's Local Rules do not contemplate a sur-reply, *see* L.U. Civ. R. 7(b), and "surreplies are heavily disfavored by courts," *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (quotation omitted). "The purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard, and to *rebut* the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Info-Power Int'l, Inc. v. Coldwater Tech., Inc.*, No. 3:07-CV-0937-P, 2008 WL 5552245, at

---

[2] Rubi did not file a Notice of Service of Expert Disclosure on the record as required by Local Uniform Civil Rule 26(a)(2), but she apparently served her Disclosure upon BP Defendants. *See* L.U. Civ. R. 26(a)(2) ("A party must make full and complete disclosure as required by FED.R.CIV.P. 26(a)(2) and L.U.CIV.R. 26(a)(2)(D) no later than the time specified in the case management order by serving the disclosure on all counsel of record and concomitantly filing a Notice of Service of Expert Disclosure with the court.").

5

*8 (N.D. Tex. Dec. 31, 2008) (emphasis in original) (quotation omitted). "Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Ward v. American Red Cross*, No. 3:13-CV-1042-L, 2013 WL 2916519, at *1 n.* (N.D. Tex. June 14, 2013). However, "a district court abuses its discretion when it denies a party the opportunity to file a surreply in response to a reply brief that raised new arguments and then relies solely on those new arguments [in] its decision." *RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr. - DTD 2/8/95*, 836 F. App'x 232, 235 (5th Cir. 2020).

2.  Discussion

Rubi argues that a Sur-Reply is needed in order "to address the merits of numerous new arguments and legal theories raised for the first time in BP's Reply Memorandum." Mot. [128] at 1. According to Rubi, her proposed Sur-Reply, which is attached as an Exhibit [128-1] to her Motion, corrects "a number of new misleading and fallacious arguments brought by the BP Defendants," which suggest

> (1) the extent and duration of exposure is not subject to differing interpretations; (2) that Dr. Perlin's expert report does not provide any opinions on the extent and duration of exposure because it does not quantify exposure with actual data but rather uses a computer model; and (3) that Plaintiff is attempting to change course by arguing that her medical experts – not Dr. Perlin – will submit the necessary opinions on the extent and duration of her alleged exposure.

*Id.* at 2 (quotations and footnotes omitted).

BP Defendants respond that any allegedly new arguments contained in their Reply "were raised to address allegations made in Plaintiff's Opposition to

6

Defendant's Motion for Summary Judgment . . . or were asserted as further support for arguments made in BP's initial brief." Mem. [130] at 2.

The Court finds that the parties have exhaustively briefed every issue related to BP Defendants' Motion [121] for Summary Judgment, and that the Court can resolve Defendants' Motion without the need of a Sur-Reply. Rubi does not seek to submit any additional evidence with her proposed filing, and her request to file a Sur-Reply is substantively unnecessary. Rubi's Motion [128] for Leave to File Sur-Reply is therefore not well taken and will be denied. Even if the Court considered the arguments raised in Rubi's proposed Sur-Reply, however, the result would not change, and BP Defendants would still be entitled to summary judgment.

B.   BP Defendants' Motion [121] for Summary Judgment

1.   Relevant legal standards

   a.   Summary judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court "must view all evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

  b. <u>Causation in BELO cases</u>

BP Defendants' Motion for Summary Judgment challenges Plaintiff's ability to establish causation, an essential element of her claim. *See* Mot. [121]; Mem. [122]. Specifically, Defendants assert that Rubi has not come forward with any expert opinions to establish the extent and duration of her exposure and cannot prove causation. *See* Mem. [122] at 9-11.

Rubi has designated Dr. Perlin and Dr. Paris as her experts, but their reports do not offer an opinion as to the extent and duration of Rubi's exposure. *See* Pl.'s Expert Discl. [121-4] at 2-3. Nor is there any indication in the record that any expert retained by Rubi has opined as to the extent and duration of her exposure.

Traditionally in tort cases, a plaintiff must "prove that it is more likely than not that another individual has caused him or her harm." *Allen v. Pa. Eng'g Corp.*,

102 F.3d 194, 198 (5th Cir. 1996) (quotation omitted).  In this case, the MSA provides that it "shall be interpreted in accordance with General Maritime Law," *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2:10-md-02179-CJB-DPC, ECF 6427-1 at 192 (E.D. La. May 3, 2012), and that BELO suits for LMPCs may litigate legal causation at trial, *see id.* at 67.

In toxic tort cases, the Fifth Circuit has pronounced the following causation standard:

> General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury. Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence. Thus, there is a two-step process in examining the admissibility of causation evidence in toxic tort cases. First, the district court must determine whether there is general causation. Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.

*Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (internal citations omitted).  Whether under diversity jurisdiction or general maritime law, for a plaintiff to establish legal causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain a plaintiff's burden." *Allen*, 102 F.3d at 199; *see Seaman v. Seacor Marine, LLC*, 326 F. App'x 721, 723 (5th Cir. 2009).  The Fifth Circuit requires proof through expert testimony. *Seaman*, 326 F. App'x at 723; *Harriel v. BP Expl. & Prod. Inc.*, No. 2:17-CV-197-KS-MTP, 2019 WL 2574118 at *3 (S.D. Miss. May 15, 2019).

The Fifth Circuit has declined to decide whether the toxic tort standard or

9

another causation standard should apply to BELO litigation where such a determination is unnecessary because the plaintiff has "failed to offer the evidence necessary to prove legal causation per the MSA under any plausible causation standard." *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 434 & n.2 (5th Cir. 2020). However, it is clear from Fifth Circuit precedent that, to survive summary judgment, a plaintiff must present evidence to at least meet some "plausible causation standard." *Id.*

2. The parties' arguments

Defendants' Motion challenges the extent and duration of Rubi's alleged exposure. They take the position that Rubi has presented no evidence that addresses her purported exposure, as Drs. Perlin and Paris's Joint Expert Report "wholly failed to address the extent and duration of Plaintiff's alleged exposure," Mem. [122] at 3, and Rubi has offered no other evidence to demonstrate legal causation, *see id.* at 5, 9-10.

Rubi does not dispute that such expert testimony is required to support her claims but responds that "the deadline for designating medical and other experts, necessary to prove the minimal facts regarding Plaintiff's exposure to oil, dispersants, or other substances as a result of the BP Oil Spill has not yet passed" because the Court stayed the designation of medical experts. Resp. [126] at 1; *see id.* at 9. Rubi contends that "[t]he stay allowed Dr. Perlin to offer her opinion on the scientific knowledge of the extent and duration of exposure to crude oil and Polycyclic Aromatic Hydrocarbons ('PAH's'), allowing time for the parties to then

designate their medical experts to discuss the measure of dose as well as general and specific causation," and then permit the later-designated medical experts to use the model discussed in the Joint Expert Report and "subsequently create an exposure or dose assessment for this particular Plaintiff." *Id.* (footnote omitted).

According to Rubi, "Dr. Perlin's report was necessary for a medical expert to determine whether Plaintiff's LMPCs were caused by the exposure." *Id.* at 10. Rubi therefore "requests that this Court deny Defendants' Motion, to allow the medical and other Plaintiff experts draft their report to determine whether Plaintiff proved causation." *Id.* at 11. Citing Federal Rule of Civil Procedure 56(d), Rubi asserts that the Court should either deny or defer ruling on BP Defendants' Motion for Summary Judgment. *See id.* at 11-12.

BP Defendants reply that Dr. Perlin's report fails to state how much or for how long Rubi was exposed to any oil spill contaminants, even though Rubi had previously represented to this Court that the report would include numerical calculations demonstrating levels of exposure to PAHs in invisible oil. *See* Reply [127] at 2 (citing Pl.'s Mem. [89] at 12, 15). In her Memorandum [89] seeking an extension filed on December 3, 2020, Rubi represented that, since July 2020,

> Dr. Natalie Perlin has still been working to develop a model that applies the methodology used in the Invisible Oil Study *in order to quantify the level and duration of Plaintiff's PAH exposure, corresponding to Plaintiff's dates, times, and locations during oil spill response work.*
> \* \* \*
> Plaintiff must offer proof as to the levels and duration of Plaintiff's exposure in order to establish specific causation in this case. This new evidence that the Plaintiff anticipates finalizing will be the most accurate scientific evidence to date and will significantly contradict BP's theory that the Plaintiff did not suffer exposure enough to cause injury.

11

Pl.'s Mem. [89] at 12, 15 (emphasis added).

According to BP Defendants, Rubi now "attempts to change course by arguing that her 'medical experts' – not Dr. Perlin – will submit the necessary opinions on the extent and duration of her alleged exposure." Reply [127] at 3. BP Defendants further point out that the two proposed experts referenced in Rubi's Response, Ranajit Sahu, Ph.D. ("Dr. Sahu") and James Clark ("Dr. Clark"), Ph.D., are not medical experts, as one has a Ph.D. in mechanical engineering and the other a Ph.D. in environmental health science. *See id.* BP Defendants assert that Drs. Sahu and Clark are exposure experts, rather than medical experts. *See id.*

BP Defendants oppose Rubi's request under Rule 56(d) on grounds that it is procedurally and substantively defective and should be denied. *See id.* at 5. Although Rubi submitted affidavits from Dr. Sahu, Dr. Clark, and her attorney stating that an additional 30 days is required to develop and disclose exposure evidence, BP Defendants insist that such an extension should not be permitted, as Rubi's repeated requests for extensions to marshal such evidence has forced BP Defendants to incur additional costs and suffer prejudice, which should not be permitted to continue. *See id.* at 6.

3. Rubi's Rule 56(d) request

As an initial mater, Rubi's Rule 56(d) request does not comply with the Court's Local Rules, as "[a]ny written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by [Rule 7(b)]." L.U. Civ. R. 7(b).

Rubi's request should be denied for this reason alone.[3]

Even on its merits, Rubi's Rule 56(d) request is not well taken and should be denied. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a court may defer consideration of or deny the motion, allow time for discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d). "When a party requests a continuance of a summary judgment motion to conduct discovery, the moving party must (1) demonstrate specifically how the requested discovery pertains to the pending motion, and (2) diligently pursue relevant discovery." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 413 (5th Cir. 2021) (quotation omitted). Given the record in this case, including the length of time Rubi has had to tender expert evidence on causation and the numerous extensions of deadlines she has received in order to do so, Rubi cannot show diligence. Even if Rubi could show diligence, she has not demonstrated how discovery would change the outcome of BP Defendants' Motion for Summary Judgment.

To succeed on her Rule 56(d) request, Rubi "must explain how the additional discovery will create a genuine issue of material fact." *Id.* (quotation omitted). Rubi relies upon the Joint Expert Report of Drs. Perlin and Paris, which she maintains will permit other experts to build upon and demonstrate causation. As part of her request to defer, Rubi has submitted the Affidavits of Dr. Sahu [126-1]

---

[3] Additionally, neither Affidavit [126-1], [126-2] technically complies with 28 U.S.C. § 1746 for unsworn declarations under penalty of perjury. For example, neither is dated, and it is unclear from the record when they were signed. *See* 28 U.S.C. § 1746.

and Dr. Clark [126-2]. According to these Affidavits, Dr. Sahu and Dr. Clark have worked with Rubi's counsel since February 2021 and December 2020, respectively,

> on fate and transport and exposure modeling to support proper exposure models for individuals associated with various aspects of cleanup after the BP Oil Spill in 2010. This includes shoreline cleanup workers and Zone Residents. Exposure modeling or exposure data are [sic] important inputs for subsequent risk determinations and assessment of health outcomes for exposed individuals.

Aff. of Dr. Sahu [126-1] at 2; Aff. of Dr. Clark [126-2] at 2-3.

According to the Affidavits, both Dr. Sahu and Dr. Clark "have developed exposure assessments for cleanup workers," Aff. of Dr. Sahu [126-1] at 3; Aff. of Dr. Clark [126-2] at 3, but "these models still need adapting for specific situations and cleanup workers such as Ms. Lourdes Rubi," with a *minimum* of 30 days needed to do so, Aff. of Dr. Sahu [126-1] at 3; *see* Aff. of Dr. Clark [126-3] at 3. Dr. Sahu avers he has "reviewed Dr. Perlin and Dr. Paris['s] oil model report which confirms and provides information on the location, arrival time, and extent of oil relevant to a claimant's work exposure," and "provides insight on the concentration of toxicants of concern." Aff. of Dr. Sahu [126-1] at 3. Dr. Clark's Affidavit does not mention the oil model report, but states that, if Rubi adds additional conditions to those for which she currently has sued, he "will need to produce a new report or at least supplement [his] report to include research and analysis on the relationship between the chemicals of concern and additional claimed conditions." Aff. of Dr. Clark [126-3] at 3.

Even if the Court permitted Rubi additional time at this late date to designate Drs. Sahu and Clark as experts, the resolution of BP Defendants' Motion

for Summary Judgment would not change. Dr. Sahu, as a mechanical engineer, is not qualified to and certainly cannot provide the medical testimony necessary to show specific causation for Rubi's alleged injuries, and likely cannot offer testimony as to general causation either. Dr. Clark is a toxicologist, not a medical professional, and Rubi has not attempted to explain how he is qualified to offer any medical opinions as to specific causation, meaning whether a substance caused Rubi's specified injury. *See Knight*, 482 F.3d at 351. Instead, Dr. Clark refers to analyzing the relationship between certain chemicals and claimed medical conditions, which only goes to general causation. *See id.*

Because Rubi had not specifically demonstrated how any future report of Dr. Sahu or Dr. Clark would create a genuine issue of material fact as to the pending Motion for Summary Judgment, her request for Rule 56(d) should be denied. *See Binh Hoa Le*, 990 F.3d at 413. Simply put, based upon their Affidavits, the anticipated testimony of Dr. Sahu or Dr. Clark would not change the outcome.

Rubi has also presented the Affidavit of her attorney, C. David Durkee ("Durkee"), who states that "[t]ypically, in BELO cases, the policy of my firm is to secure Dr. Perlin's expert report first so that the other Plaintiff's experts may rely on her report in forming their own opinions based on the specific medical conditions alleged." Aff. of Durkee [126-3] at 2. Counsel represents that, if the Magistrate Judge's Order [116] did not stay all medical testimony, "it would take no more than [30] days to provide complete reports [sic] expert reports to satisfy all the elements of a Back End Litigation Option Lawsuit," which "will be necessary to oppose a

15

proper motion for summary judgment because they are anticipated to establish general and specific causation." *Id.* at 3. These conclusory assertions that counsel anticipates sufficient expert testimony will be forthcoming are insufficient. "A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (quotations omitted). Moreover, Rule 56(d) "is usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party," which is certainly not the case here. *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987).[4] Rubi filed her BELO Complaint three years ago and has received numerous extensions of her deadline to designate experts. She has had more than ample time to develop needed expert testimony and has not done so.

Rubi's counsel represents that he believed that May 20, 2021, was only the deadline for designating extent and duration of exposure experts, and that discovery for additional experts would be stayed so that a new LMPC could be consolidated with the pending action. *See, e.g.,* Aff. of Durkee [126] at 2. While the deadline set forth in the Magistrate Judge's Order [116] may have been limited to extent and duration experts, there was no prohibition on BP Defendants seeking

---

[4] This case refers to Rule 56(f), *see Union City Barge Line Inc.*, 823 F.2d at 136, but that rule was recodified "without substantial change" in the 2010 amendments as Rule 56(d), *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010) (quoting Fed. R. Civ. P. 56(d), 2010 amend, cmt. (2010)).

summary judgment on Rubi's current claims, and there was no guarantee that the Court would permit additional LMPCs to be consolidated into this case prior to a dispositive motion being filed by Defendants. Moreover, to date no such claims have been added. *See, e.g.,* Order [116] at 4 (stating that the new LMPCs "are not presently before the Court," and that "**[i]f** other LMPCs are later added to the lawsuit, the parties' extent and duration experts will be afforded an opportunity to amend their expert reports") (emphasis added).

Rubi's Rule 56(d) request is not adequately supported and should denied. Her procedural arguments concerning the purported prematurity of BP Defendants' Motion for Summary Judgment are also not well taken.

4. <u>BP Defendants' Motion for Summary Judgment</u>

Despite representing to the Court in December 2020 that Dr. Perlin would offer opinions on the level and duration of Plaintiff's exposure, and despite receiving an extension from the Court to submit Dr. Perlin's report in order to do so, no such opinions are offered. *See* Joint Report [121-4] at 6-44. Without sufficient expert testimony on causation, Rubi cannot carry her burden of providing scientific evidence of the harmful level of exposure to the chemicals, an essential element of her claim. *See Harriel*, 2019 WL 2574118, at \*4. She has not submitted any evidence regarding the extent or duration of her level of exposure, and her deadline for doing so has passed. Rubi alleges that exposure to the oil, dispersants, and other harmful chemicals caused her medical issues, but despite receiving numerous extensions of her deadline for doing so, she has not identified the levels of chemicals

at which these conditions occur, which chemicals caused these conditions, or the amount of oil, dispersants, or other harmful chemicals to which she was exposed.

Even if Rubi were somehow found to have shown general causation through the Joint Expert Report of Drs. Perlin and Paris, which she has not, or even if she could do so with the anticipated testimony of Drs. Sahu and Clark, she has not pointed to competent proof through medical testimony that any oil, dispersants, or other chemicals from the Oil Spill caused her injuries. Instead, Rubi has acknowledged that it is "beyond the expert[ise] of Dr. Perlin or Dr. Paris to opine on the toxicological properties of those substances as they related to human health," Resp. [126] at 9 n.30, and she offers no expert evidence to establish specific causation, even with the experts she references in her Rule 56(d) request. As such, Rubi has failed to raise a genuine issue of material fact on whether her work on the Oil Spill caused her medical conditions at issue in this case. Because Rubi cannot meet her burden of proof on an essential element of her claim, summary judgment should be granted.

### III. CONCLUSION

As Rubi has not shown the existence of a question of material fact for resolution at trial on the issue of causation, summary judgment should be granted. To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Lourdes Rubi's Motion [128] for Leave to File Sur-Reply is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants BP Exploration & Production, Inc., and BP America Production Company's Motion [121] for Summary Judgment Based on the Lack of Expert Evidence as to the Extent and Duration of Plaintiff's Alleged Exposure is **GRANTED**, and Plaintiff Lourdes Rubi's claims in this BELO lawsuit are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 28th day of January, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE